UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| JEFFREY GRAY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | Civil Action File No. |
| ) | |
| CATHY SASNETT, in her individual ) | 7:23-cv-00120-WLS |
| and official capacity as the Manager ) | |
| of the Georgia Department of ) | |
| Economic Development, ) | **JURY TRIAL DEMANDED** |
| SGT. KYLE WHITE, ) | |
| MIKE WELCH, in their individual ) | |
| and official capacities as LEOs, ) | |
| ) | |
| *Defendants*. ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff JEFF GRAY ("Plaintiff"), and file this Complaint, showing the Court as follows:

1.

Defendant CATHY SASNETT ("Defendant Sasnett") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and at all relevant times of this case was the Manager for the Georgia Department of Economic Development located in Valdosta, Georgia during the acts alleged herein, and she may be served at **6960 NE Rocky Ford Rd, Pinetta,**

**FL 32350.**

2.

Defendant SGT. KYLE WHITE ("Defendant White") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was the sergeant in charge and a responding LEO with the Lowndes County Sheriff's Office during the acts alleged herein, and he may be served personally at work at Lowndes County Sheriff's Office at 120 Prison Road, Valdosta, GA 31603.

3.

Defendant DEPUTY MICHAEL WELCH ("Defendant Welch") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was a Deputy with the Lowndes County Sheriff's Office and responding LEO, and he may be served personally at home at 1601 Norman Drive, Apt F6, Valdosta GA 31601 or at work at Lowndes County Sheriff's Office at 120 Prison Road, Valdosta, GA 31603.

**FACTUAL BACKGROUND FOR CLAIMS**

4.

On or about September 30, 2021, Plaintiff was in Valdosta, Georgia holding a sign outside of the Georgia Department of Economic Development with the words

"God Bless Homeless Veterans" depicted on the front of the sign.

5.

At no time was Plaintiff soliciting for money, business, or services, nor was he using obscene or abusive language, nor was he blocking the pathway of any individuals from being able to traverse on the side walk on which he was standing, nor was he obstructing the pathway to any entrance or exit.

6.

Plaintiff was at all times relevant herein, breaking no laws and doing nothing to arguably be considered breaking a law.

7.

Plaintiff took a short break from his sign-holding to go inside the government building for purposes of using the restroom.

8.

Upon returning to the side walk, Defendant Sasnett approached Plaintiff to inquire whether Plaintiff needed any sort of assistance, to which Plaintiff politely declined.

9.

Defendant Sasnett then told Plaintiff that he "can't hang out here with that sign," erroneously claiming that doing so constituted "soliciting", despite Plaintiff

not asking for any donations, money, or help of any sort.

10.

Plaintiff politely and respectfully disagreed with Defendant Sasnett, and assured her that he only intended to remain there for approximately one to two hours to hold up a sign to say "God Bless Homeless Veterans".

11.

Defendant Sasnett erroneously told Plaintiff that Plaintiff was not permitted to do any such thing as a private citizen on state property that constituted political or religious speech.

12.

After again politely and respectfully disagreeing, Defendant Sasnett insisted that Plaintiff leave the premises.

13.

When Plaintiff, who at all times was peacefully following the law and exercising his rights under the State and Federal Constitutions, Defendant called the Lowndes County Sheriff's Office to come out and present Plaintiff with a trespass notice.

14.

Defendant Welch was the first to respond to Defendant Sasnett's call, and

informed Plaintiff that Defendant Sasnett did not want Plaintiff outside of the public building holding up his sign saying "God Bless Homeless Veterans".

15.

When Plaintiff asked what policy or law he had violated, Defendant Welch stated that "[i]t would be criminal trespassing," as the workers inside get to decide who they do or do not want on the property.

16.

When Plaintiff informed Defendant Welch that he was on public property, Defendant Welch had difficulty understanding that "property owned by the State" constitutes public property, and insisted that Plaintiff leave if that is what the employees inside the public building wanted him to do.

17.

Plaintiff asked for clarification as to whether he is being criminally trespassed from the property, to which Defendant Welch was unsure after having not yet spoken with Defendant Sasnett.

18.

Plaintiff assured Defendant Welch that he (Plaintiff) was not soliciting, and only engaged in free speech and freedom of religion on public property, and asked that Defendant Welch take that into consideration before he criminally trespasses

Plaintiff.

19.

Defendant Welch responded with "it is their [State employees'] property, so they can do what they want," despite the State employees, including Defendant Sasnett, having no legal interest in the government property apart from what interest every other citizen of Georgia has as a taxpayer that funds the property.

20.

Plaintiff informed Defendant Welch that this was incorrect, as this was public property, again assured Defendant Welch that he was not violating any law or policy, but stated that he would leave if he is criminally trespassed.

21.

Defendant White then arrived on the scene when Plaintiff asked to speak with him regarding the situation of potentially being criminally trespassed on public property for engaging in free speech, which is protected under the Federal and State Constitutions.

22.

Plaintiff informed Defendant White that he believed Defendant Sasnett had a misunderstanding as to Plaintiff's activity, as she erroneously believed him to be engaged in solicitation instead of free speech, which is protected under the Federal

and State Constitutions. Plaintiff additionally informed Defendant White that he was not violation of any policy or law.

23.

Defendant White then stated to Plaintiff that although he acknowledged that Plaintiff was on public property, the property was "owned by the State of Georgia," and erroneously stated that this technically made it "private property". Defendant White further erroneously analyzed that the management in charge of said public property can dictate who can and cannot be on said property.

24.

When Plaintiff inquired whether this choice to determine who can or cannot be on the property may be arbitrarily made by State employees, Defendant White responded emphatically with "yes, absolutely." Defendant White then made a comparison to instances where Walmart has made such decisions, despite Walmart being a private corporation in possession of privately-owned property in lieu of being a government agency possessing property which is funded by the taxpayer.

25.

Upon Defendant Welch's return, Plaintiff again asserted that if he was being criminally trespassed that he would leave under protest, as he did not want to go to jail.

26.

Defendant Welch informed Plaintiff that the State employees, including Defendant Sasnett, did not want to criminally trespass him, but that they did not want Plaintiff to be holding the sign or approaching visitors.

27.

When Plaintiff inquired what would happen if he continued to hold the sign, Defendant Welch stated "[t]hen it would be criminal trespass." Defendant Welch then stated that the property is run by the manager, who is Defendant Sasnett, and she can give the order that Plaintiff stop doing what he is doing (engaging in free speech protected under the Federal and State Constitutions) or he must leave.

28.

When Plaintiff respectfully disagreed, to which Defendant Welch informed Plaintiff that Plaintiff could move a few feet over to the side of the road and continue doing what he is doing, which was engaging in free speech protected by the Federal and State Constitutions. If Plaintiff wished to remain on State property, he would be required to obtain a permit to do so, despite Defendant Welch not citing to any law requiring Plaintiff to obtain a permit for such activity, and having earlier acknowledged that Plaintiff was not in violation of any law or policy.

29.

When Plaintiff again informed Defendants Welch and White that he was strictly engaged in freedom of speech and freedom of religion, Defendant White acknowledged that "[i]t *is* freedom of speech and freedom of religion—[he] will agree with [Plaintiff] on that."

30.

Plaintiff informed Defendants White and Welch that he will leave only if he is criminally trespassed, but would rather remain on the property to continue engaging in his right to freedom of speech and freedom of religion, and respectfully disagreed with the notion that he had to cease doing this absent some violation of the law, which was already acknowledged that he had not committed any such illegal activity.

31.

Defendant Welch, despite acknowledging that Plaintiff had not been criminally trespassed, that he must cease doing what he is doing immediately or he would be arrested.

32.

Under duress in fear of the loss of his liberty, Plaintiff wished Defendants White and Welch a good day before leaving the premises, despite having not violated any law or policy and under threat of arrest if he did not do so.

### CLAIMS UNDER 42. U.S. CODE § 1983 CIVIL ACTION FOR

## DEPRIVATION OF RIGHTS

33.

The ensuing matters against each defendant originate from Plaintiffs' rights, safeguarded under 42 U.S.C. § 1983.

### COUNT 1a. 42. U.S. CODE § 1983 : FIRST AMENDMENT CLAIM – RETALIATION AND CHILLING

34.

Plaintiff, while exercising his First Amendment rights of expression and religion, faced unjustified interference and chilling of speech from each Defendant (together "Defendants").

35.

Despite Plaintiff being lawfully engaged in freedom of speech and freedom of religion, Defendants insisted that Plaintiff cease his lawful activity and leave the public property, despite no law providing the authority to require Plaintiff to leave for engaging in legal and protected activity.

36.

At no time did Plaintiff commit any expression of unlawful or unprotected speech.

37.

Defendants inaccurate assertions about the ability of State employees to use

their authority over a citizen's access to public property in an arbitrary manner to dictate who may or may not be on the premises.

38.

Defendants unlawfully targeted Plaintiff with attempts to chill his speech by threatening to arrest him should he not leave immediately, despite Plaintiff having committed no crime, nor receiving a criminal trespass notice.

39.

Defendants retaliated against Plaintiff for politely declining to cease engaging in his protected speech, and attempted to chill speech, by arbitrarily targeting him for threats of arrest and prosecution for engaging in the inalienable right to speak and worship God.

40.

Defendants colluded and conspired with each other in retaliating against Plaintiff, abusing their constitutional authority by attempting to deprive Plaintiff of his rights to speak and worship. Defendants in fact prevented Plaintiff from continuing his speech.

### Count 1b. First Amendment violation Claim - Worship

41.

Defendant Sasnett attempted to dictate unilaterally whether citizens were

permitted to engage in free speech or religious conduct on public property.

42.

Defendants White and Welch assisted Sasnett in the enforcement of her arbitrary exercise of authority over public access to the public property, which effectively worked as each Defendant working together to outlaw free speech and freedom of religion.

43.

Each Defendant's conduct violated Plaintiff's protected speech and religious freedoms under the Federal and State Constitutions.

## **Count 2. First Amendment Retaliation and Chilling Claim**

44.

Each Defendant retaliated against Plaintiff for his lawful religious activities by singling Plaintiff out as not being permitted to engage in his protected rights on public property where there was no law against engaging in such activity, with Defendant White asserting that this discretion may be applied arbitrarily, and threatening to arrest Plaintiff should he not immediately comply with the unlawful orders to cease his protected constitutional activities.

45.

These actions intended to chill Plaintiff's protected speech, and were punitive

responses to Plaintiff's lawful and protected religious activities. It adversely affected Plaintiff's speech by causing Plaintiff to cease his exercise of free speech and religion under the threat of being arrested if he did not do so.

## STATE LAW CLAIMS

### Count 8. Deprivation of Speech under the Georgia constitution

46.

The Constitution of the State of Georgia protects the right of citizens to "worship God, each according to the dictates of that person's own conscience," which makes it clear that "no human authority should, in any case, control or interfere with such right of conscience."[1]

47.

The Constitution of the State of Georgia also protects the freedom of religion.[2]

48.

The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content,"[3] yet this is exactly what Defendants did as Defendant Sasnett explicitly told Plaintiff that he could not engage in his speech because it was political or religious, and Defendants White and Welch enforced

---

[1] Ga. Const. Art. I, Sec. I, Para. III.
[2] Ga. Const. Art. I, Sec. I, Para. IV.
[3] Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972).

Defendant Sasnett's arbitrary and unlawful order to remove Plaintiff from the public premises for engaging in his protected speech.

49.

While the government may "adopt reasonable restrictions regulating the time, place, or manner of expression,"[4] no such law existed at the time of Plaintiff's protected speech and religious activity that was interrupted and obstructed by Defendants. Furthermore, the government is not authorized to set such restrictions in the State of Georgia unless such restrictions are the least restrictive means of achieving its goals so as "to suppress no more speech than is necessary to achieve [its] goals."[5] Each Defendant in this case arbitrarily applied non-existent policies and standards to which citizens, including Plaintiff, had no notice regarding any restriction of speech, nor could any of the Defendants cite to any such law or policy of which Plaintiff violated.

50.

Due to the facts stated in the preceding paragraph, Defendants had no authority under Georgia law to prevent Plaintiff from holding his sign on public property, and yet promised him arrest and jail time should he refuse to cease his protected activity.

51.

---

[4] Coffey v. Fayetteville County, 279 Ga. 111 (2005).
[5] Id.

Defendants' threats against Plaintiff caused Plaintiff to cease his constitutionally-protected activities, and violated Plaintiff's rights.

52.

Because of the violation of Plaintiff's rights under the Federal and State Constitutions committed by Defendants, Plaintiff is entitled to declaratory relief under the Georgia Constitution.

**Count 13. Negligence**

53.

Each Defendant, as law enforcement officers or state government officials, had a duty to know the law in relation to civilians' rights to free speech and other Constitutional provisions, as well as the well-established law regarding those rights, and also to uphold and defend those rights.

54.

Each of Defendants' failure to be familiar with these rights laid out in the previous paragraph constitutes a breach of Defendants' duties to Plaintiff, who was a civilian engaged in the lawful exercise of his Constitutional rights.

55.

Each of the Defendants further breached their duties by not only failing to uphold and defend Plaintiff's rights, but further breached their duties to Plaintiff by

acting under the color of law when they threatened Plaintiff with arrest should he not immediately cease engaging in his Constitutionally-protected rights.

56.

Plaintiff was damaged by having his rights violated by Defendants who threatened to trespass and arrest him should he not immediately cease engaging in his Constitutionally-protected rights.

57.

Plaintiff's inability to continue engaging in his Constitutionally-protected rights to free speech was caused by Defendants threatening to trespass and arrest him if he did not comply with their unlawful orders to cease engaging his said rights.

58.

Each of Defendants' conduct breached their legal duties under numerous laws, including the open records act, the Georgia constitution, and public policies of Lowndes County, which damaged Plaintiffs

### **Count 14. Punitive Damages**

59.

The actions of Defendants, as set forth above, show intentional and willful misconduct, wantonness, and that entire want of care which raises the presumption of a conscious indifference to the consequences of their actions.   Accordingly, Plaintiff

seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1 and Federal law.

## **Count 15. Attorney's Fees**

60.

The actions of each Defendant, as set forth above, show intentional and willful misconduct, malice, and bad faith to impose attorney's fees under State law. Further, Plaintiffs' 42 U.S.C. § 1983 claims provide fee-shifting, imposing attorney's fees against Defendants should these claims prevail, and Plaintiffs therefore seek attorney's fees.

WHEREFORE, Plaintiffs pray:

(a) That Summons issue requiring Defendants to be and appear in this Court within the time provided by law to answer this Complaint;

(b) That Plaintiff receive a Jury Trial;

(c) That Plaintiff receive favorable Judgment against Defendants for Compensatory Damages, General Damages, and Pain and Suffering as provided by law;

(d) That Plaintiff be awarded Punitive Damages and Attorney's Fees as provided by law including but not limited to pursuant to 42 U.S.C. § 1988;

(e) That Plaintiff be awarded declaratory and injunctive relief, declaring that Defendants violated Plaintiff's constitutional rights, and enjoining them from

preventing public comment criticizing government officials in the future; and,

(h)   That Plaintiff have such other additional relief as the Court may consider equitable and/or appropriate, given the circumstances of this case.

### JURY TRIAL DEMANDED

Respectfully Submitted, this 20th day of November, 2023.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643

Catherine Bernard
Georgia State Bar No. 505124

Jessica Burton
Georgia State Bar No. 916253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law