IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| JEFFREY GRAY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:23-CV-120 (WLS) |
| | : | |
| SGT. KYLE WHITE, and | : | |
| DEPUTY MIKE WELCH, in their | : | |
| individual and official capacities as LEOs | : | |
| with the Lowndes County Sheriff's | : | |
| Office, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants' Motion to Dismiss the Amended Complaint (Doc. 7). Therein, Defendants Kyle White and Mike Welch move to dismiss Plaintiff's Amended Complaint on the grounds of official and qualified immunity. For the reasons stated below, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    PROCEDURAL BACKGROUND

Plaintiff Jeffrey Gray ("Plaintiff") initiated this lawsuit in the State Court of Lowndes County, Georgia, on October 2, 2023. (Doc. 1-1). On November 6, 2023, Defendants Deputy Mike Welch and Sergeant Kyle White removed the case to this Court and filed a motion to dismiss for failure to state a claim. (Docs. 1 & 2). Plaintiff, in response, filed an Amended Complaint (Doc. 6), which rendered the motion to dismiss moot. (*See* Doc. 21). Plaintiff's Amended Complaint asserts claims against White and Welch and now-dismissed-defendant Cathy Sasnett, in their individual and official capacities, under 42 U.S.C. § 1983 for violations of his rights under the First Amendment and state law claims for negligence and violations of his rights under the Constitution of the State of Georgia.

On November 29, 2023, Defendants Welch and White filed a Motion to Dismiss the Amended Complaint (Doc. 7). Plaintiff filed his response in opposition (Doc. 10) on

1

December 27, 2023. Thereafter, Defendants Welch and White filed their Reply (Doc. 11). On February 8, 2024, now-dismissed-defendant Cathy Sasnett filed a Motion to Dismiss (Doc. 14). All Defendants filed Motions to Stay Discovery (Docs. 15 & 16) pending the Court's ruling on their Motions to Dismiss, which the Court granted (Doc. 17) and stayed discovery in this case.

On May 7, 2024, the Court entered an Order (Doc. 21) addressing the motions to dismiss. The Court granted Sasnett's Motion (Doc. 14) based on the Parties' agreement that the Court lacked jurisdiction over Sasnett for lack of valid service and dismissed Sasnett as a party in this action. The Court granted in part Defendants Welch and White's Motion (Doc. 7) based on lack of proper service and ordered Plaintiff to properly and timely serve Defendants. The Court deferred its ruling on the merits of the Motion on other grounds asserted to allow Plaintiff the opportunity to effectuate service.

Thereafter, Plaintiff failed to file proof of service on the Record, as required by Federal Rule of Civil Procedure Rule 4(l)(1), by the deadline set by the Court. The Court again ordered Plaintiff to comply with Rule 4 by filing the appropriate proof of executed service by November 13, 2024. (*See* Doc. 23). On November 13, 2024, Plaintiff filed two proof of service affidavits (Doc. 24) in response to the Court's Order. The affidavits indicated a summons was served on Defendant Welch on November 13, 2024, and that Plaintiff's attempt to serve Defendant White was frustrated by White's apparent deliberate and knowing attempt to avoid service. (*Id.* at 2). Given White's conduct, the Court provided Plaintiff with one final opportunity to effectuate proper service. (Doc. 30). Plaintiff was ultimately able to serve White and Welch, in accordance with the Federal Rules, as evidenced by the proof of service affidavits filed on November 28 and December 3, 2024. (Docs. 31 & 32). As such, the Court returns to Defendants' Motion to Dismiss (Doc. 7) to consider the additional grounds asserted.

Defendants move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Amended Complaint (Doc. 6). After discussing the standard of review and the allegations, the Court considers Defendants' arguments in turn.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the [p]laintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of a plaintiff's pleadings, the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555), for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint.

3

## III.    LAW AND ANALYSIS

### A.  Plaintiff's Allegations

On or about September 30, 2021, Plaintiff was holding a sign outside of the Georgia Department of Economic Development in Valdosta, Georgia, that had the words "God Bless Homeless Veterans" written on the front of the sign. (Doc. 6 ¶ 4). Plaintiff was "at no time" soliciting for money, business, or services; nor using obscene or abusive language; nor blocking the pathway of any individuals from using the sidewalk on which he was standing; nor obstructing the pathway to any entrance or exit. (*Id.* ¶ 5). Plaintiff took a short break from his sign-holding to go inside the government building to use the restroom. (*Id.* ¶ 7). When Plaintiff returned to the sidewalk, Sasnett approached Plaintiff to inquire whether he needed assistance, to which Plaintiff declined. (*Id.* ¶ 8). Sasnett informed Plaintiff that he couldn't "hang out here with that sign" and that his actions constituted soliciting. (*Id.* ¶ 9). After some discussion, Sasnett insisted that Plaintiff leave the premises and called the Lowndes County Sheriff's Office. (*Id.* ¶¶ 10–13).

Welch, a deputy with the Sheriff's Office, arrived at the Economic Development office first and informed Plaintiff that Sasnett did not want Plaintiff outside of the building and holding the sign. (*Id.* ¶ 14). Plaintiff asked Welch what law or policy he was violating, to which Welch stated that "[i]t would be criminal trespassing," and that the employees inside controlled who was on the property. (*Id.* ¶ 15). When Plaintiff protested that he was on public property, Welch again insisted that Plaintiff leave. (*Id.* ¶ 16). Plaintiff assured Welch that he was not soliciting, but instead engaged in free speech and freedom of religion on public property. (*Id.* ¶ 18). Welch was unpersuaded and again told Plaintiff that "it is their [State employees'] property, so they can do what they want[.]" (*Id.* ¶ 19). Plaintiff disagreed and again asserted that he was not violating any law or policy, but stated that he would leave if presented with a trespass notice. (*Id.* ¶ 20).

At some point during this discussion, White, a Sergeant with the Sheriff's Office arrived. (*Id.* ¶ 21). Plaintiff told White that he believed Sasnett was misunderstanding Plaintiff's activity as solicitation instead of free speech. (*Id.* ¶ 22). White informed Plaintiff that the public property was "owned by the State of Georgia" and that this technically made it a "private

4

property." (*Id.* ¶ 23). Plaintiff asked him if the State's employees can decide who can and cannot be on the public property, to which White responded, "yes, absolutely." (*Id.* ¶ 24). Welch returned from speaking with Sasnett and informed Plaintiff that the employees inside did not want Plaintiff holding the sign or approaching visitors. (*Id.* ¶¶ 25–26). Plaintiff asked what would happen if he continued to hold the sign, and Welch stated that it would constitute criminal trespass. (*Id.* ¶ 27). Plaintiff disagreed with the opinion at which point Welch told Plaintiff that he could "move a few feet over to the side of the road and continue doing what he was doing," but if Plaintiff wished to remain on the public property, he would need to obtain a permit to do so. (*Id.* ¶ 28). Plaintiff told Welch and White that he was "strictly engaged in freedom of speech and freedom of religion," and White agreed. (*Id.* ¶ 29).

Plaintiff expressed that he would rather stay and continue holding his sign, but that he would voluntarily leave if he was criminally trespassing. (*Id.* ¶ 30). Welch told Plaintiff that he would be arrested if he did not leave. (*Id.* ¶ 31). Plaintiff wished the officers a good day and left the premises. (*Id.* ¶ 32).

### B.  Eleventh Amendment Immunity

Defendants move to dismiss Plaintiff's official-capacity claims, asserting immunity under the Eleventh Amendment. The Eleventh Amendment generally prohibits suits against a state by its own citizens in federal court. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[I]t has long been settled that the amendment applies equally to suits against a state brought in federal court by citizens of that state."). There are three situations where a state will be deemed to have surrendered its Eleventh Amendment sovereign immunity:

> (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court; (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

*Id.* at 1278 (citations omitted). None of these situations are present here. First, "§ 1983 does not . . . abrogate the Eleventh Amendment immunity of the States." *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Second, while Plaintiff's prayer for relief includes a request for injunctive relief "enjoining [Defendants] from preventing public comment criticizing government

officials in the future[,]" Plaintiff does not allege any continuing violation of federal law. (Doc. 6 at 17–18). Finally, Defendants have not waived Eleventh Amendment immunity by removing this case to federal court. Plaintiff cites *Lapides v. Board of Regents*, 535 U.S. 613 (2002), to argue that by voluntarily appearing in federal court, Defendants have waived immunity. (Doc. 10 at 5). But the Supreme Court in *Lapides* narrowed its discussion and holding to whether a state's removal to federal court waives its immunity to venue in a federal forum and left open the question of whether removal also waives a state's immunity from liability. *Lapides*, 535 U.S. at 617–18 ("Nor need we address the scope of waiver by removal in a situation where the State's underlying sovereign immunity from suit has not been waived or abrogated in state court."). In *Stroud v. McIntosh*, the Eleventh Circuit discussed *Lapides* at length and ultimately held that "sovereign immunity is a divisible concept" such that "a state can waive its forum immunity but retain other aspects of sovereign immunity, including immunity from liability for certain claims." 722 F.3d 1294, 1301, 1303 (11th Cir. 2013).

Thus, Plaintiff is correct that Defendants have waived immunity from a federal forum by removing the case to this Court, a point which Defendants do not contest. (*See* Doc. 11 at 2). However, Defendants have not waived Eleventh Amendment immunity from liability merely by virtue of the removal as Plaintiff suggests. *See Page v. Hicks,* 773 F. App'x 514, 518 (11th Cir. 2019) (holding that under the Circuit's precedent interpreting *Lapides*, the defendant's "removal did not affect the [defendant's] immunity from liability for monetary damages"); *Hagan v. Ward*, No. 5:22-CV-00107, 2022 WL 1632158 (M.D. Ga. May 23, 2022), *aff'd sub nom. Hagan v. Comm'r, Georgia Dep't of Corr.*, No. 22-12180, 2023 WL 5621895 (11th Cir. Aug. 31, 2023) (finding that the Department of Corrections did not waive immunity from liability for monetary damages by removing the case to federal court).

Further, "[t]he state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Harbert Int'l, Inc.*, 157 F.3d at 1277 (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)). The Eleventh Circuit has held that "[w]hether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged" and that courts are to consider: "(1) how state law defines the entity; (2) what degree of control the State

6

maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders v. Lee*, 338 F.3d 1304, 1308–09 (11th Cir. 2003). "Applying the *Manders* factors, numerous courts [in this Circuit] have found that sheriffs and their deputies serve as 'arms of the state' when engaging in law enforcement functions." *Carter v. Butts Cnty., Ga.*, 110 F. Supp. 3d 1325, 1350 n.11 (M.D. Ga. 2015), *aff'd in part, rev'd in part and remanded*, 821 F.3d 1310 (11th Cir. 2016) (finding that sheriff and his deputy were acting as arms of the state during warrantless arrest); *see Townsend v. Coffee Cnty., Ga.*, 854 F. Supp. 2d 1345, 1352 (S.D. Ga. 2011) (finding that deputy sheriff "was acting as an 'arm of the state'" while making an investigatory stop and arrest) and *Hall v. Fries*, No. 13–CV–105, 2014 WL 1389063, at *5 (M.D. Ga. Apr. 9, 2014) (finding that sheriff and deputy served as arms of the state during fatal shooting of suspect); *see also Scruggs v. Lee*, 256 Fed. App'x 229, 231–32 (11th Cir. 2007) (holding that "as employees of the sheriff, deputies . . . in their official capacities, are also entitled to Eleventh Amendment immunity").

As alleged, Defendants were engaged in a law enforcement function, specifically, the investigation of a potential crime, when they interacted with Plaintiff outside of the Economic Development office. As such, the Court finds that Defendants served as "an arm of the state" during the events surrounding the interaction with Plaintiff and are thus entitled to Eleventh Amendment immunity. Plaintiff's official-capacity § 1983 claims thus fail. Those claims are therefore dismissed with prejudice.

### C. Qualified Immunity

Defendants move to dismiss Plaintiff's individual-capacity claims, asserting qualified immunity. Qualified immunity shields government officials from civil liability to the extent their conduct "does not violate clearly established statutory or constitutional rights" about which a reasonable official would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine balances two key interests: "(1) the need to hold public officials accountable when they exercise power irresponsibly and (2) the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (enumeration added). If an officer asserts qualified immunity on a

7

motion to dismiss, a court must address it. *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1332–34 (11th Cir. 2025) (citing *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018)).

### 1. *Discretionary Authority*

At the first step, an official must establish that he performed a discretionary function when the alleged constitutional violation occurred. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (quotation marks omitted). A discretionary function is "a legitimate job-related function (that is, pursuing a job-related goal)" pursued through means that were within an official's power to employ. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265–66 (11th Cir. 2004) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.14 (11th Cir. 1994)). Generally, "[i]nvestigating crimes, conducting searches, and making arrests are legitimate job-related functions" for police officers. *West v. Adams*, No. 1:19-CV-219, 2021 WL 4505612, at *3 (M.D. Ga. Sept. 30, 2021) (alteration in original) (quoting *Mears v. McCulley*, 881 F. Supp. 2d 1305, 1318–19 (N.D. Ala. 2012)); *see also Grider v. City of Auburn*, 618 F.3d 1240, 1267–68 (11th Cir. 2010); *Carter v. Butts Cnty.*, 821 F.3d 1310, 1317–19 (11th Cir. 2016).

As alleged, Defendants performed a discretionary function when they allegedly violated Plaintiff's constitutional rights. Plaintiff sues for Defendants' actions when they investigated a potential crime. (*See generally* Doc. 6). Investigating a potential criminal trespass is, of course, related to Defendants' duties as a sheriff's deputy and sergeant. So when the alleged violation occurred, Defendants were acting within their discretionary authority.

### 2. *Constitutional Violation*

At the second step, the burden now shifts to Plaintiff to defeat qualified immunity. *See Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (citing *Mikko v. City of Atlanta*, 857 F.3d 1136, 1319 (11th Cir. 2017)). To do so, Plaintiff must meet two requirements. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199–1200 (11th Cir. 2007)). First, Plaintiff must sufficiently allege a constitutional violation. *Echols*, 913 F.3d at 1319 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Second, Plaintiff must show that his violated right was "clearly established at the time[.]" *Id.* (quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 735). Plaintiff cannot show a constitutional violation here.

To state a First Amendment retaliation claim under § 1983, Plaintiff must show (1) that he engaged in speech or an act that was constitutionally protected, (2) Defendants' retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally protected speech or act. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Plaintiff's claim fails under the third element.

As to the first element, at the time of Plaintiff's interaction with Defendants, he was engaged in protected speech. *See Heffron v. International Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (stating that oral and written dissemination of religious views and doctrines is protected by the First Amendment). Defendants do not dispute that the first element is sufficiently alleged. (*See* Doc. 11 at 3–4).

As to the second element, "a defendant adversely affects protected speech if his alleged retaliatory conduct 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Bailey v. Wheeler*, 843 F.3d 473, 481 (11th Cir. 2016) (quoting *Bennett*, 423 F.3d at 1254). "The threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." *Turner v. Williams*, 65 F.4th 564, 580 (11th Cir. 2023). As alleged, Defendants threatened to cite Plaintiff for trespassing and told him that he would be arrested if he did not leave from outside Economic Development office. These threats would deter a person of ordinary firmness from exercising First Amendment rights.

As to the third prong, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Turner*, 65 F.4th at 581 (quoting *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves*, 587 U.S. at 398. In other words, a defendant's retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* at 399. This means that, taking Plaintiff's alleged facts as true, it must be plausible that, had Defendants not had any ill will toward Plaintiff, he would not have been threatened with arrest.

9

In the context of a First Amendment retaliatory arrest claim[1], "the Supreme Court has instructed that a plaintiff 'must plead and prove the absence of probable cause for the arrest.'" *See Turner*, 65 F.4th at 581 (quoting *Nieves*, 587 U.S. at 398). "When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested." *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) (citing *United States v. Rubio,* 727 F.2d 786, 791 (9th Cir. 1984) ("We strongly disagree with any inference that criminal investigation is somehow prohibited when it interferes with . . . First Amendment interests. When activity protected by the First Amendment becomes the subject of a criminal investigation, the protections afforded by the Fourth Amendment come into play.")). In *Redd v. City of Enterprise*, police officers arrested a traveling minister who was preaching on a public sidewalk for disorderly conduct under Alabama law. The Eleventh Circuit held that the officers were entitled to qualified immunity on the minister's First Amendment retaliation claim, even though the minister was engaged in protected speech in a traditional public forum because the officers had arguable probable cause to arrest him, the arrest was content-neutral, and the Alabama disorderly conduct statute was presumptively valid. *Redd*, 140 F.3d at 1383. Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (quoting *Redd*, 140 F.3d at 1382).

Defendants cite O.C.G.A. § 16-7-58, which provides: "It shall be unlawful for any person to place posters, signs, or advertisements on any public property or building, unless the owner thereof or the occupier as authorized by such owner has given permission . . . ." O.C.G.A. § 16-7-58(a)(1). As alleged, Plaintiff was holding a sign at a public facility owned by the State of Georgia. Plaintiff was told by Sasnett, the manager of the facility, that he was not allowed to hold the sign on the property. Sasnett also expressed to Defendants that Plaintiff did not have permission to hold the sign on the property. Under these facts, Defendants had arguable probable cause to arrest Plaintiff for either placing signs on public property without

---

[1] While Defendants ultimately did not arrest Plaintiff, his claim is properly analyzed as a retaliatory arrest claim because, as alleged, the only retaliatory action taken against him was a threat of arrest. (*See* Doc. 6 ¶¶ 38–40, 44–45).

permission in violation of O.C.G.A. § 16-7-58, or for criminal trespass[2], even though they ultimately decided not to arrest Plaintiff. Plaintiff argues that he "repeatedly and politely asserted that he had the right to stand in the public place located outside the public building to hold up his sign, [and] respectfully disagreed that he was doing anything wrong." (Doc. 10 at 7). Plaintiff's argument, however, does not negate the fact that it was objectively reasonable for Defendants to believe that probable cause, or at least arguable probable cause, existed to arrest Plaintiff for placing signs on public property without permission as a result of Plaintiff holding the sign on the property without permission. Plaintiff's Complaint, therefore, fails to plausibly allege an absence of probable cause, which is necessary to show a causal connection between the alleged retaliatory actions and the adverse effect on Plaintiff's speech.

Even if the Court were to analyze Plaintiff's retaliation claim outside of the retaliatory arrest context, the result would be the same. This is so because Plaintiff has not alleged that Defendants were "subjectively motivated" to retaliate against him because of his protected speech. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008) ("The causal connection inquiry asks whether the defendants were subjectively motivated to [retaliate] . . . ."); *see Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014) (stating that at the motion to dismiss stage, a "[p]laintiff must identify a sequence of events from which a retaliatory motive can be inferred, notwithstanding other non-retaliatory motives the defendant may harbor[]"). As alleged, Defendants' sole reason for requesting that Plaintiff leave the Economic Development office was that the employees inside, including Sasnett, had not given Plaintiff permission to display his sign there and wanted him to leave. White even agreed that Plaintiff was exercising his First Amendment rights, and Welch further told Plaintiff that he could "move a few feet over"—off the premises—and continued holding his sign. Plaintiff's contention that Defendants "colluded and conspired with each other" to retaliate against him and "unlawfully targeted [him]" is conclusory and unsupported by factual allegations. (Doc. 6

---

[2] It does not matter whether Defendants threatened to arrest Plaintiff for criminal trespass or for holding his sign on public property because "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992); *see Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) (quoting *United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973) ("Indeed, '[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.'")).

¶¶ 38, 40). Thus, Plaintiff has not alleged any facts from which the Court could infer that Defendants were subjectively motivated to retaliate against him because of his speech, i.e., his sign that read "God Bless Homeless Veterans."

In sum, Defendants are entitled to qualified immunity because Plaintiff cannot show a constitutional violation.[3] Plaintiff's individual-capacity § 1983 claims thus fail. Those claims are dismissed with prejudice.

### D.  State Law Claims

Lastly, Defendants move to dismiss Plaintiff's state-law claims. Because the Court declines to exercise supplemental jurisdiction over those claims, it doesn't reach their merits.

District courts have original jurisdiction over claims arising under federal law. 28 U.S.C. § 1331. So the Court has original jurisdiction over Plaintiff's federal claims. Over state-law claims, the Court may exercise supplemental jurisdiction if those claims are "so related" to the original-jurisdiction claims "that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). The Court, however, may decline to exercise supplemental jurisdiction if it has dismissed all original-jurisdiction claims. 28 U.S.C. § 1367(c)(3). If so, the Court considers "judicial economy, convenience, fairness, and comity" to determine if it should exercise supplemental jurisdiction. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). Allowing state courts to resolve state-law claims, serves both comity and judicial economy. *Id.* This principle carries particular force when federal-law claims have been dismissed prior to trial. *Id.*

The Court has dismissed Plaintiff's § 1983 claims—its source of original jurisdiction. Considering judicial economy, fairness, and comity, the Court declines supplemental

---

[3] The Court notes that, even were it to find a constitutional violation, Plaintiff has not shown that his violated right was "clearly established at the time at the time of the challenged conduct." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (quotation omitted). Plaintiff bears the burden of showing that a right was clearly established and may do so by pointing to a "materially similar case [that] has already been decided[,]" or "a broader, clearly established principle that should control the novel facts of the situation." *Id.* at 1324 (quoting *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). A right may also be clearly established where "the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary." *Id.* Plaintiff neither cites to a materially similar case, nor a broader principle that should control. Plaintiff merely states that he has sufficiently stated a First Amendment claim "to which there is clearly-established law[.]" (Doc. 10 at 8). This conclusory statement is insufficient to show a clearly established right. And as discussed above, the Court does not find that Defendants' conduct in this case violated the Constitution to render citation to prior case law unnecessary.

jurisdiction over the state-law claims. Therefore, those claims are dismissed without prejudice. Because the Court does not reach the state-law claims' merits, Defendants' motion to dismiss those claims is denied, as moot.

## CONCLUSION

In sum, Defendants were acting as arms of the state during the events alleged in Plaintiff's complaint, and Defendants are therefore entitled to Eleventh Amendment immunity from liability on Plaintiff's official-capacity § 1983 claims. Plaintiff cannot show a First Amendment violation upon the allegations and this Record. Qualified immunity thus bars Plaintiff's individual-capacity § 1983 claims. And the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

Hence Defendants' Motion to Dismiss (Doc. 7) is **GRANTED**, in part, and **DENIED**, in part (as moot). Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED**, with prejudice. His state-law claims are **DISMISSED**, without prejudice, because the Court declines to exercise supplemental jurisdiction over those claims. The lawsuit is thus **DISMISSED**.

**SO ORDERED**, this 30th day of March 2026.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**